FILED: 12/29/2022 12:02 PM
David Trantham
Denton County District Clerk
By: Jennifer Croy, Deputy

Cause No. _____

22-10962-431

| | | |
|---|---|---|
| ERIC TOLBERT, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | NO. _____ OF |
| | § | |
| PENNYMAC LOAN SERVICES, LLC, | § | |
| | § | |
| Defendant. | § | DENTON COUNTY, TEXAS |

## <u>PLAINTIFFS' ORIGINAL VERIFIED PETITION</u><br><u>AND REQUEST FOR TEMPORARY RESTRAINING ORDER</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Eric Tolbert, ("Tolbert" or "Plaintiff(s)"), and serves this, Plaintiff's Original Verified Petition against Defendant, PennyMac Loan Services, LLC ("PennyMac" or "Defendant(s)"), and in support thereof, would respectfully show the Court as follows:

I.
<u>Discovery Level</u>

1. Discovery of this matter shall be conducted pursuant to Level 3 pursuant to Rule 190.4 of the Texas Rules of Civil Procedure.

II.
<u>Parties</u>

2. Plaintiff Eric Tolbert is the owner of the property located at 4224 W Crescent Way Frisco, TX 75034 (the Residence), which is located in Denton County, Texas and may receive all correspondence and filings via their attorney of record herein.

3. Defendant, PennyMac Loan Services, LLC, is a financial corporation that conducts business in Texas with an address of P.O. Box 30597, Los Angeles, CA 90030. This **Defendant may be served through its registered agent at the following address or wherever it may be found:** <u>C T CORPORATION SYSTEM 1999 BRYAN ST., STE. 900 DALLAS TX 75201.</u>



### III.
### Venue

4.  Venue is proper in Denton County, Texas, as that all or a substantial part of the events or omissions giving rise to the claim occurred in Denton County, Texas and it involves real property located in Denton County, Texas.   Tex. Civ. Prac. & Rem. Code §15.002(a) and §15.011.

### IV.
### Facts

5.  On September 15th, 2017 plaintiff, Eric Tolbert purchased the home located 4224 W Crescent Way, Frisco, TX 75034 as his homestead. (See EXHIBIT "A" for a true and correct copy of Plaintiff's Warranty Deed and Deed of Trust).

6.  In 2019 Mr. Tolbert was injured on the job and went on long term disability with 60% salary.  He also was hit very hard by COVID during this time.

7.  He then filed bankruptcy in 2019 due to this decrease in salary.

8.  The problems snow-balled when PennyMac didn't include the arrearage in it's original filings.   When PennyMac finally did include the arrearage it bumped his required payments under the bankruptcy up to a point that they were impossible to manage.

9.  PennyMac then obtained a relief from automatic stay in July of 2022 and proceeded with foreclosure in the beginning of December 2022.

10. However, during this time, Mr. Tolbert filed for a loan modification in July 2022 and then again in October 2022, but because his current interest rate is so low, a modification would actually increase his monthly payment, and so he was denied the modification. See attached EXHIBIT B for the modification application and denial letter.



11. Additionally, Mr. Tolbert tried, repeatedly, to speak with PennyMac or any of its representatives in order to obtain the reinstatement amount and then take out an emergency deduction from his 401k to make that payment, but no one would speak with him or provide that requested reinstatement number. See attached EXHIBIT C for the emergency 401k withdrawal request.

12. The next thing Mr. Tolbert received from PennyMac, besides the modification denial letter, after they obtained their relief from stay was the Notice of Foreclosure sale and Appointment of Substitute Trustee attached hereto as EXHIBIT D.

13. Mr. Tolbert never received a notice of intent to acceleration and opportunity to cure prior to the bankruptcy or prior to the above-mentioned Notice of Sale being sent to him.

14. All the facts stated herein are verified by Eric Tolbert via the attached verification made under penalty of perjury.

## V.
## Bond

15. Plaintiff is prepared to deposit a bond in the amount of one month's mortgage payment with the court in order to secure the issuance of the Temporary Restraining Order.

## VI.
## Causes of Action

### A.    *Temporary Restraining Order and Injunctive Relief*

16. Defendant, by foreclosing on the Property will cause Plaintiffs to suffer imminent harm and irreparable injury and must be stopped by a temporary restraining order and ultimately a permanent injunction.

3



17. It is essential that the Court immediately and temporarily restrain the defendant from foreclosing on the Property, scheduled for sale on January 3rd, 2023. It is essential that the court act immediately, prior to notice on defendant and a hearing on the matter, as the date of the foreclosure sale is imminent and no amount of money will adequately compensate Plaintiff for the loss of the Residence.

18. For the reasons stated in this pleading, Plaintiff requests that, after final trial of this matter, the Court permanently enjoin defendant from continuing to violate Plaintiff's rights by ceasing and desisting all foreclosure activity.

19. As shown by the facts plead herein, Plaintiff has a probable right to relief against defendant under claims for violations of the Texas Property Code, Violations of Texas Civil Practice and Remedies Code § 12.002, Violations of RESPA, Breach of Contract, Violations of the Truth in Lending Act, and Violations of the TDCA.

**B.      *Violations of Texas Property Code – No notice of intent to accelerate and notice to cure provided***

20. All facts and allegations set forth above are incorporated by reference herein for all purposes.

21. The power of acceleration is a harsh remedy and calls for close scrutiny. *See Vaughan v. Crown Plumbing & Sewer Serv., Inc., 523 S.W. 2d 72, 75 (Tex. Civ. App. – Houston (1st Dist.) 1975, writ ref'd n.r.e.).* The exercise of the right of acceleration requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration. *Shumway v. Horizon Credit Corp., 801 S.W.2d 890, 892 (Tex. 1991); and see Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 569–570 (Tex. 2001).* Both notices must be "clear and unequivocal". *Id. at 893 and 566.* Finally, whether the right of acceleration was exercised is a fact question. *Holy Cross Church of God v. Wolf at 568.*



22. Failure to give the required notice is sufficient to cause a court to set aside the foreclosure sale. See Bauder v. Alegria, 480 S.W.3d 92, 98 & n.8 (Tex. App.—Houston [14th Dist.] 2015, no pet.); Shearer v. Allied Live Oak Bank, 758 S.W.2d 940, 942 (Tex. App.—Corpus Christi 1988, writ denied).

23. Therefore, because the Notice of Intent to Accelerate was not provided to Plaintiff, the foreclosure process is deficient and Plaintiff seeks declaratory relief that Defendant/Lender is not entitled to foreclose and requests that this court grant the request for a Temporary Restraining Order to be later followed by a Temporary Injunction.

## C.    *Violations of Texas Property Code – Required Substitute Trustee Address Note Provided*

24. All facts and allegations set forth above are incorporated by reference herein for all purposes.

25. The power of acceleration is a harsh remedy and calls for close scrutiny. *See Vaughan v. Crown Plumbing & Sewer Serv., Inc., 523 S.W. 2d 72, 75 (Tex. Civ. App. – Houston (1st Dist.) 1975, writ ref'd n.r.e.).* The exercise of the right of acceleration requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration. *Shumway v. Horizon Credit Corp., 801 S.W.2d 890, 892 (Tex. 1991); and see Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 569–570 (Tex. 2001).* Both notices must be "clear and unequivocal". *Id. at 893 and 566.* Finally, whether the right of acceleration was exercised is a fact question. *Holy Cross Church of God v. Wolf at 568.*

26. Under Texas Property Code Chapter 51 any debtor who, according to the records of the mortgage servicer, is obligated to pay the debt must be served with a valid and

5



correct written notice of the trustee's sale by certified mail [Tex. Prop. Code § 51.002(b)(3)].

27. Failure to give the required notice is sufficient to cause a court to set aside the foreclosure sale. See Bauder v. Alegria, 480 S.W.3d 92, 98 & n.8 (Tex. App.—Houston [14th Dist.] 2015, no pet.); Shearer v. Allied Live Oak Bank, 758 S.W.2d 940, 942 (Tex. App.—Corpus Christi 1988, writ denied).

28. Additionally, under Section 51.0075(e) of the Texas Property Code, the Notice of Acceleration must include not only the name of the foreclosing trustee, but also the street address. *See G4 Tr. v. Consol. Gasoline, Inc.,* 02-10-00404-CV, 2011 WL 3835656, at *8-10 (Tex. App.-Fort Worth Aug. 31, 2011, pet. denied) (notice of sale ***did not include street address for trustee*** pursuant to Tex. Prop. Code § 51.0075(e) and, hence, deed of trust terms were not strictly followed; thus, sale was ***void)*** (emphasis added); *In re George W. 59 Inv., Inc.,* 526 B.R. 650, 658 (N.D. Tex. 2015) (same). *See also Univ. Sav. Ass'n v. Springwoods Shopping Ctr.,* 644 S.W.2d 705, 706 (Tex. 1982) ("Texas courts have consistently held that the terms set out in a deed of trust must be strictly followed."); *Myrad Props., Inc., v. LaSalle Bank Nat'l Ass'n,* 252 S.W.3d 605, 615 (Tex. App — Austin 2008) ("Because a trustee's power to sell the property is derived from the deed of trust and statute, strict compliance with these requirements is considered a prerequisite to the trustee's right to make the sale."), *rev'd on other grounds,* 300 S.W.3d 746 (Tex. 2009); *see also Houston First Am. Sav. v. Musick,* 650 S.W.2d 764, 768 (Tex. 1983) ("Compliance with the notice condition contained in the deed of trust and as prescribed by law is a prerequisite to the right of the trustee to make the sale.")

6



29. As the court can see on the attached EXHIBIT "D", a true and correct copy of the Notice of Acceleration provided by the defendant, there is no address for the trustee included.

30. It is clear from this error on the face of the Notice of Acceleration that the defendant did not care to follow the requirements placed upon it by the State of Texas, and therefore sent out, and filed with Denton County, an incorrect Notice of Acceleration.

31. Therefore, because the Notice of Acceleration is deficient on its face Plaintiff seeks declaratory relief that Defendant/Lender is not entitled to foreclose and requests that this court grant the request for a Temporary Restraining Order to be later followed by a Temporary Injunction.

**D.**     ***Violations of Texas Civil Practices & Remedies Code § 12.002***

32. All facts and allegations set forth above are incorporated by reference herein.

33. Section 12.002 of the Texas Civil Practices and Remedies Code ("CPRC") creates liability for a person who makes, presents, or uses a document or record with "knowledge that the document or other record is a ... fraudulent lien or claim against real or personal property or an interest in real or personal property." TEX. CIV. PRAC. & REM. CODE § 12.002(a)(1).

34. Defendants violated section 12.002 of the Texas CPRC when it posted the Notice of Substitute Trustee Sale with the clerk's office containing no address, or a bogus address, for the substitute trustee.

35. Under section 12.002, Defendants are liable to Plaintiff for the greater of $10,000 or Plaintiff's actual damages caused by the violation, their court costs, reasonable attorney's fees, and exemplary damages in an amount to be determined by the court. TEX. CIV. PRAC. & REM. CODE§ 12.002(b)(l).

7



### E. *Violations of RESPA*

36. All facts and allegations set forth above are incorporated by reference herein for all purposes.

37. Plaintiffs assert that at the time Defendants posted their home for foreclosure sale, Plaintiffs had not been offered any loss mitigation options and Plaintiffs were more than forty (40) days out from the foreclosure sale date.

38. Defendants committed several violations under RESPA section 6(f), 12 U.S.C.§2614, 12 C.F.R.§ 1024.35, § 1024.39, and §1024.41. Defendants have violated RESPA in the following ways: 1) In failing to provide accurate information to Plaintiffs for loss mitigation options and foreclosure as required by 12 C.F. R.§ 1024.39; 3) In failing to provide the Plaintiffs with a specific reason or reasons for denial of all loan workout alternatives prior to posting their home for foreclosure; 4) Imposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower 5) In moving for foreclosure judgment or order of sale or conducting a foreclosure sale prior to providing a specific reason or reasons for denial of all loan workout alternatives.

39. Under 12 U.S.C.§2605 (f), Regulation Z 24 C.F.R.§ 3500, if the servicer fails to take one of the required actions within the time limit, under RESPA a borrower may recover:

    a.   any actual damages suffered by the borrower

    b.   if there is a pattern or practice of servicer noncompliance, additional damages not to exceed $2000, and

    c.   attorneys' fees and costs. 12 U.S.C.§§ 2605[f][3].

40. Here, Plaintiffs assert that Defendants have violated several RESPA procedures causing Plaintiffs to suffer actual damages and request that the court award the maximum amount of damages allowed under the law.



*F. Breach of Contract*

41. All facts and allegations set forth above are incorporated by reference herein for all purposes.

42. "The elements of a breach of contract claim are ( 1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages to the plaintiff resulting from that breach." *Harris v. Am. Prot. Ins. Co.,* 158 S.W.3d 614, 622-23 (Tex. App.-Fort Worth 2005, no pet.).

43. Defendants failed to comply with the Texas Property Code in the effort to foreclose which constitutes a breach of the Deed of Trust. See attached EXHIBIT A for a true and correct copy of the breached Deed of Trust.

44. Under the Texas Property Code, as stated above, the notice of sale must include specific language in order to be an effective notice of acceleration under Section 51.002 of the Texas Property Code.

45. Because the notice did not strictly comply with the Texas Property Code, and therefore the Deed of Trust terms were not strictly followed, the Notice of Trustee Sale is void. *See G4 Tr. v. Consol. Gasoline, Inc.,* 02-10-00404-CV, 2011 WL 3835656, at *8-10 (Tex. App.-Fort Worth Aug. 31, 2011, pet. denied) (notice of sale *did not include street address for trustee* pursuant to Tex. Prop. Code § 51.0075(e) and, hence, deed of trust terms were not strictly followed; thus, sale was *void)* (emphasis added); *In re George W. 59 Inv., Inc.,* 526 B.R. 650, 658 (N.D. Tex. 2015) (same). See also *Univ. Sav. Ass'n v. Springwoods Shopping Ctr.,* 644 S.W.2d 705, 706 (Tex. 1982) ("Texas courts have consistently held that the terms set out in a deed of trust must be strictly followed."); *Myrad Props., Inc., v. LaSalle Bank Nat'l Ass'n,* 252 S.W.3d 605, 615 (Tex. App — Austin 2008) ("Because a trustee's power to sell the property is

9



derived from the deed of trust and statute, strict compliance with these requirements is considered a prerequisite to the trustee's right to make the sale."), *rev'd on other grounds*, 300 S.W.3d 746 (Tex. 2009); *see also Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 768 (Tex. 1983) ("Compliance with the notice condition contained in the deed of trust and as prescribed by law is a prerequisite to the right of the trustee to make the sale.")

46. Plaintiffs contend that the scheduled foreclosure cannot and should not proceed because Defendants' failure to comply with the Texas Property Code is fatal and is a breach of contract.

47. As a proximate result of the foregoing wrongful conduct by defendant, plaintiff has incurred damages-plaintiff has lost time and money taking other remedial steps to stop the wrongfully scheduled and conducted foreclosure. Plaintiffs also incurred court costs and reasonable and necessary attorneys' fees, of which they seek recovery.

48. Plaintiff requests that the Court find that Defendants breached the Deed of Trust by not being in compliance with the Texas Property Code.

### G. TDCA Violations

49. All facts and allegations set forth above are incorporated by reference herein for all purposes.

50. The Texas Debt Collection Act (the "TDCA") is the Texas counterpart to the Federal Debt Collect Practices Act (the "FDCPA") and is found at TEX. FIN. CODE § 392.001 et. Seq.

51. The TDCA provides remedies for wrongful debt collection practices used by a debt collector in debt collection. See Tex. Fin. Code§§ 392.001-.404; see also Ford v. City State Bank of Palacios, 44 S.W.3d 121, 135 (Tex. App.-Corpus Christi 2001, no pet.).



52. "Debt collection" is defined as the act or practice "in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." Tex. Fin. Code § 392.001(5).

53. Defendants violated the TDCA. See Tex. Fin. Code § 392.001 et seq.

54. To state a claim for a TDCA violation, the plaintiff is required to show that the defendant: (1) is a debt collector; (2) committed a wrongful act in violation of Tex. Fin. Code § 392.01 et seq.; (3) against the plaintiff; and (4) as a result, the plaintiff was injured. See McCaig v. Wells Fargo Bank (Texas), NA., 788 F.3d 463, 480-81 (5th Cir. 2015) ("[t]he statutory text [of the TDCA] contains no intent requirement . . . as suggested by the statute's plain text, district courts have recognized that facially innocuous misrepresentations made in the course of an attempt to collect a debt constitute a violation of [the TDCA ]."); see also Catherman v. First State Bank, 796 S.W.2d 299, 302 (Tex. App.-Austin 1990, no writ).

55. The debt in question relating to Plaintiffs' home is a "consumer debt" within the meaning of such statute because the debt is an obligation for personal, family, or household purposes. Tex. Fin. Code § 392.001(1), (2). Furthermore, Plaintiffs are "consumers" within the meaning of Tex. Fin. Code § 392.001.

56. A "debt collector" is "a person who directly or indirectly engages in debt collection." Id. § 392.001(6). This definition also includes a mortgage servicer. See Miller v. BAC Home Loans Servicing, LP, 726 F.3d 717, 723 (5th Cir. 2013). Defendants, therefore, are debt collectors.

57. Defendants' acts and omissions as alleged supra constitute TDCA violations. The TDCA provides that, in debt collection or obtaining information concerning a



consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices:

    a. (8) misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding. Tex. Fin. Code Ann.§ 392.304(a)(8).

    b. (19) using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer. Tex. Fin. Code § 392.304(a)(19).

58. Defendants also violated Tex. Fin. Code §392.301(a)(8): using threats, coercion, or attempts to coerce that employ any of the following practices: threatening to take an action prohibited by law.

59. Defendants violated § 392.304(a)(8) when it noticed a foreclosure sale despite its failure to comply with the Texas Property Code. As a result, Defendants "led [Plaintiffs] to think differently with respect to the character, extent, amount, or status of [her] debt." Ingram v. Beneficial Fin., Inc., No. 3:13-CV-4037-L, 2015 WL 1443110, at *9 (N.D. Tex. Mar. 30, 2015). Defendants set the foreclosure sale anyway in flagrant disregard of the Texas Property Code.

60. Section 392.304(a)(19) is a catch-all provision that prohibits debt collectors from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." *Birchler v. JPMorgan Chase Bank*, No. 4:14-CV-81-ALM, 2015 WL 1939438, at *5 (E.D. Tex. Apr. 29, 2015). Plaintiffs maintain that Defendants violated § 392.304(a)(19) when it failed to comply with the express provisions of the Deed of Trust.

61. Defendants also violated § 392.301(a)(8) when it scheduled the foreclosure sale absent a valid contractual right to foreclose.



62. The Fifth Circuit Court of Appeals has acknowledged that even if a loan is in default, a lender may still violate § 392.301(a)(8). "In determining whether foreclosure would be prohibited by law, however, what matters is whether the mortgagor has a right to foreclose, not whether the debt is considered in default." *McCaig v. Wells Fargo Bank (Texas), NA.,* 788 F.3d 463, 478 (5th Cir. 2015).

63. Defendant's acts and omissions amounted to violations of the Texas Property Code and violations of the applicable statute of limitations under Tex. Civ. Prac. & Rem.Code Ann. § 16.035, and thus Defendants took "an action prohibited by law" when it noticed the foreclosure of Plaintiff's home.

64. The Supreme Court of Texas has also opined that a party can recover injunctive relief and actual damages that are a "reasonably foreseeable result of the wrongdoer's conduct." Brown v. Oaklawn Bank, 718 S.W.2d 678, 680 (Tex. 1986). The Northern District has noted "that Brown suggests that the harm claimed must have been merely a 'reasonably foreseeable result' of alleged misconduct under the TDCA [but] it does not require that the harm be the sole result of a defendant's acts." Clark v. Deutsche Bank Nat'l Tr. Co., 3:14-CV-3590-B, 2016 WL 931216, at *7 (N.D. Tex. Mar. 11, 2016)(emphasis added). Thus, the causation standard for a TDCA violation is akin to the "producing cause" standard set forth in the Deceptive Trade Practices Act. See Tex. Bus. & Com. Code § 17.S0(a); Prudential Ins. Co. of Am. v. Jefferson Associates, Ltd., 896 S.W.2d 156, 161 (Tex. 1995).

65. Actual damages recoverable under the TDCA include damages for mental anguish and do not first require a showing of physical injury. Ledisco Fin. Servs. v. Viracola, 533 S.W.2d 951, 957 (Tex. App.-Texarkana 1976, no writ.); Monroe v. Frank, 936 S.W.2d 654, 661 (Tex. App.-Dallas 1996, writ dism'd).



66. Also, pursuant to Tex. Fin. Code § 392.403, Plaintiff is entitled to recover his attorneys' fees reasonably related to the amount of work performed and costs for all actions in the trial court and on appeal.

67. As a result of Defendants' TDCA violations, Plaintiff suffered severe mental anguish and emotional distress. Plaintiff is constantly worried and confused about the status of the loan. They also lost time away from work and suffered the inconvenience of having to resolve the matter.

VII.
Remedies and Damages

*Accounting*

68. A request for an accounting is an equitable remedy used to determine the amount of damages. *See Hutchings v. Chevron U.S.A., Inc.,* 862 S.W.2d 752, 762 (Tex. App.-El Paso 1993, writ denied). ***It is a flexible, equitable remedy that may apply in various scenarios according to the sound discretion of the trial court.*** *See, e.g., Gifford v. Gabbard,* 305 S.W.2d 668, 672 (Tex. Civ. App.-El Paso 1957, no writ); *Southwest Livestock & Trucking Co.,* 884 S.W.2d 805, 810 (Tex. App.-San Antonio 1994, writ denied).

69. Plaintiff requests an Order for an accounting of all transactions on the mortgage loan.

*Attorney's Fees*

70. Based upon the foregoing, Plaintiff requests recovery from Defendants, pursuant to Section 37.009 of the Texas Civil Practice and Remedies Code, as well as pursuant to several laws cited and quoted above, for all costs and reasonable and necessary attorneys' fees incurred herein, including all fees necessary in the event of an appeal of



this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems

necessary and just.

### VIII.
### Conditions Precedent

71. All conditions precedent to Plaintiff's recovery on all claims and damages have been

performed or have occurred.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that:

a.    A temporary restraining order be issued without notice to defendant, restraining it from conducting the foreclosure sale currently scheduled for January 3rd, 2023;

b.    A temporary injunction be issued, after notice to Defendants and an evidentiary hearing, restraining defendant from conducting the foreclosure sale currently scheduled for January 3rd, 2023 and during the pendency of this litigation; and

c.    A permanent injunction be issued, on final trial of this cause, enjoining defendant from conducting a foreclosure and thereafter;

d.    A declaratory judgment be issued stating that the note and deed of trust are now invalid and unenforceable;

e.    Compensatory damages be awarded within the jurisdictional limits of the Court;

f.    Pre-judgment and post-judgment interest as provided by law;

g.    Exemplary damages as requested herein or as determined by the Court;

h.    Reasonable attorney's fees;

i.    Costs of suit; and

j.    Such other and further relief, both general and special, to which Plaintiff may be justly entitled, whether at law or in equity.

Respectfully submitted,

LAW OFFICES OF Ryan Daniel

By:   /s/ Ryan Daniel
          Ryan Daniel
          State Bar No. 24090604
          1525 US Hwy 380, Suite 500 #102
          Frisco, TX 75033
          ryan@ryandaniellaw.com
          (469)-688-0621
          **ATTORNEY FOR PLAINTIFF**



VERIFICATION UNDER PENALTY OF PERJURY PER CPRC 132.001

My name is Eric Tolbert, my date of birth is **07/03/1970**, and my address

is 4224 W. Crescent Way, Frisco, TX 75034. I declare under penalty of perjury that the

facts stated in this document are true and correct.

Executed in **Denton** County, State of Texas, on **Dec 29, 2022**.

*Eric Tolbert*
Eric Tolbert (Dec 29, 2022 11:06 CST)
Eric Tolbert

16



**EXHIBIT A000001**

CHICAGO TITLE
GF# 8001291700033

After Recording Return To
ERIC TOLBERT
4224 W CRESCENT WAY
FRISCO, TEXAS 75034

Loan No. 420170764988

# TEXAS GENERAL WARRANTY DEED
With Vendor's Lien

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

Effective Date:  September 8, 2017

Grantor (whether one or more):  JOHN LEGASPI AND WIFE, NATALIE G. LEGASPI AND MAY REFERENCE THAT INVESTMENT PROPERTY EXCHANGE SERVICES, INC. IS ACTING AS QUALIFIED INTERMEDIARY UNDER EXCHANGE NO. EX-10-18153-SII

Grantee (whether one or more):  ERIC TOLBERT, UNMARRIED MAN

Grantee's Mailing Address:  4224 W CRESCENT WAY
FRISCO, TEXAS  75034

Consideration:
Ten and no/100 Dollars ($10.00) and other good and valuable consideration, including a note of the same date in the principal amount of THREE HUNDRED EIGHTY-NINE THOUSAND SEVEN HUNDRED AND NO/100 Dollars ($389,700.00) (the "Note"), executed by the Grantee and payable to the order of EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING, A TEXAS CORPORATION (the "Lender"). The Note is secured by a first and superior vendor's lien and superior title retained in this deed in favor of the Lender, and by a deed of trust of the same date from the Grantee to SCOTT EVERETT, Trustee for the benefit of the Lender.

Property (Including improvements):
That certain property located in DENTON County, Texas to-wit:  LOT NO. 1 BLOCK NO. W OF HERITAGE LAKES PHASE I AN ADDITION TO THE CITY OF FRISCO, DENTON COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME Q AT PAGE 40 OF THE PLAT RECORDS OF DENTON COUNTY, TEXAS..

Reservations from Conveyance:  The first and superior vendor's lien and superior title to secure payment of the Note.

Exceptions to Conveyance and Warranty:
Liens described as part of the Consideration and any other liens described in this deed as being either assumed or to which title is taken subject to; validly existing easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded and validly existing instruments, or matters apparent from those instruments, including reservations outstanding in parties other than Grantor, other than conveyances of the surface fee estate, that affect the Property; and taxes for the current year and subsequent years, which Grantee assumes and agrees to pay and subsequent assessments for the current year and prior years due to change in land usage, ownership, or both, the payment of which Grantee assumes.

Grantor, for the Consideration and subject to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty, grants, sells and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any wise belonging; To Have and To Hold unto Grantee, and Grantee's successors and assigns, forever. Grantor, and Grantor's successors and assigns, shall warrant and forever defend all and singular the Property to Grantee and Grantee's successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof except as to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty.

The Lender, at Grantee's request, has paid in cash to Grantor the portion of the purchase price of the Property that is evidenced by the Note. The first and superior vendor's lien against and superior title to the Property are retained for the benefit of the Lender, and are transferred to the Lender without recourse against Grantor.

Texas General Warranty Deed                              Page 1 of 2





**EXHIBIT A000002**

Executed to be effective as of the Effective Date.

*Natalie g. Legaspi* 9-8-17 *(signature)* 9-8-17

NATALIE G. LEGASPI AND MAY REFERENCE    Date        JOHN LEGASPI        Date
THAT INVESTMENT PROPERTY EXCHANGE
SERVICES, INC. IS ACTING AS QUALIFIED        **Acknowledgements**
INTERMEDIARY UNDER EXCHANGE NO.
EX-10-18153-SH                                          *Individual*
STATE OF ~~TEXAS~~ *California* J.A.
COUNTY OF *Los Angeles*

This instrument was acknowledged before me on ___9-8-17___ , by
- NATALIE G. LEGASPI AND MAY REFERENCE THAT INVESTMENT PROPERTY EXCHANGE SERVICES, INC. IS ACTING
AS QUALIFIED INTERMEDIARY UNDER EXCHANGE NO. EX-10-18153-SH

                                                          *(signature)*
                        (Seal)            Notary Public
                                          Printed Name: *Jacob Alexander*

*California* J.A.                          *Individual*
STATE OF ~~TEXAS~~
COUNTY OF *Los Angeles*

This instrument was acknowledged before me on ___9-8-17___ , by
JOHN LEGASPI.
                                                          *(signature)*
                        (Seal)            Notary Public
                                          Printed Name: *Jacob Alexander*

STATE OF TEXAS              *Corporate/Partnership*
COUNTY OF _____

This instrument was acknowledged before me on |_____ , by
of _____ , on its behalf.

                        (Seal)            Notary Public
                                          Printed Name:

STATE OF TEXAS              *Attorney-in-Fact*
COUNTY OF _____

This instrument was acknowledged before me on _____ , by
_____ , attorney-in-fact on behalf of _____

                        (Seal)            Notary Public
                                          Printed Name:



JACOB ALEXANDER
Notary Public - California
Los Angeles County
Commission # 2156594
My Comm. Expires Jun 14, 2020

JACOB ALEXANDER
Notary Public - California
Los Angeles County
Commission # 2156594
My Comm. Expires Jun 14, 2020

Texas General Warranty Deed            Page 2 of 2



**EXHIBIT A000003**



CHICAGO TITLE
GF# 800129170033

AFTER RECORDING RETURN TO:
**EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING**
**14801 QUORUM DRIVE, SUITE 300**
**DALLAS, TEXAS 75254**

This instrument was prepared by:
**BLACK, MANN, & GRAHAM LLP**
**2905 CORPORATE CIRCLE**
**FLOWER MOUND, TEXAS 75028**

Loan Number: 320170764988

_____ [Space Above This Line For Recording Data] _____

# DEED OF TRUST

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

MIN: **100307110009512133**
SIS Telephone #: **(888) 679-MERS**

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated **September 8, 2017**, together with all Riders to this document.

(B) **"Borrower"** is **ERIC TOLBERT, UNMARRIED MAN**. Borrower is the grantor under this Security Instrument.

(C) **"Lender"** is **EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING**. Lender is **A TEXAS CORPORATION**, organized and existing under the laws of **TEXAS**.

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                                    Form 3044  1/01
Page 1 of 14

IDS, Inc. - 30242                                                                      Borrower(s) Initials _____





**EXHIBIT A000004**

Lender's address is **14801 QUORUM DRIVE, SUITE 300, DALLAS, TEXAS 75254**. Lender includes any holder of the Note who is entitled to receive payments under the Note.

**(D) "Trustee"** is SCOTT EVERETT
Trustee's address is **14801 QUORUM DRIVE, SUITE 300, DALLAS, TEXAS 75254, DALLAS County**.

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument**. MERS is organized and existing under the laws of **Delaware**, and has an address and telephone number of **P.O. Box 2026, Flint, MI 48501-2026**, tel. **(888) 679-MERS**.

**(F) "Note"** means the promissory note signed by Borrower and dated **September 8, 2017**. The Note states that Borrower owes Lender **THREE HUNDRED EIGHTY-NINE THOUSAND SEVEN HUNDRED AND NO/100** Dollars (U.S. **$389,700.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **October 1, 2047**.

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | | | |
|---|---|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ VA Rider |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |
| ☐ Other [Specify] | | |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS
Page 2 of 14

Form 3044   1/01

IDS, Inc. - 30242

Borrower(s) Initials





**EXHIBIT A000005**

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of **DENTON**:

> **LOT NO. 1 BLOCK NO. W OF HERITAGE LAKES PHASE 1 AN ADDITION TO THE CITY OF FRISCO, DENTON COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME Q AT PAGE 40 OF THE PLAT RECORDS OF DENTON COUNTY, TEXAS.**

Parcel ID Number: **R210482**

which currently has the address of:    **4224 W CRESCENT WAY**
                                                              **FRISCO, TEXAS 75034**                                        ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.





**EXHIBIT A000006**

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually



TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS
Page 4 of 14

Form 3044   1/01

IDS, Inc. - 30242

Borrower(s) Initials _____ _____



**EXHIBIT A000007**

analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums



**EXHIBIT A000008**

and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's

TEXAS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                                          Form 3044   1/01
Page 6 of 14

IDS, Inc. - 30242                                                                              Borrower(s) Initials





**EXHIBIT A000009**

interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request**

---





**EXHIBIT A000010**

and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

---

TEXAS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS

Page 8 of 14

IDS, Inc. - 30242

Form 3044  1/01

Borrower(s) Initials 



**EXHIBIT A000011**

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

---

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                                                       Form 3044  1/01
Page 9 of 14

IDS, Inc. - 30242                                                                                        Borrower(s) Initials 





**EXHIBIT A000012**

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in

---

TEXAS--Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                                           Form 3044  1/01
Page 10 of 14

IDS, Inc. - 30242                                                                                     Borrower(s) Initials 



**EXHIBIT A000013**

Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public venue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may



EXHIBIT A000014

charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**

[X] **Purchase Money.**
The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

[ ] **Owelty of Partition.**
The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

[ ] **Renewal and Extension of Liens Against Homestead Property.**
The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

[ ] **Acknowledgment of Cash Advanced Against Non-Homestead Property.**
The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**28. Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an existing lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.





**EXHIBIT A000015**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____  -Witness          _____  -Witness



_____ (Seal)          _____ (Seal)
ERIC TOLBERT                        -Borrower                                        -Borrower

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                    Form 3044   1/01
Page 13 of 14

IDS, Inc. - 30242



**EXHIBIT A000016**

STATE OF TEXAS
County of _Collin)_ ss:

Before me _a Notary Public_ on this day personally appeared **ERIC TOLBERT**, known to me (or proven to me on the oath of _____ or through _a TX DL_ ) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed. 

Given under my hand and seal of office this _8th_ day of _September_, _2017_

My Commission Expires: _5-20-20_

(Seal)

TERRI K. YOUNG
My Notary ID # 10513152
Expires May 20, 2020

Notary Public

Loan originator (organization): **EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING**; NMLS #: 2129
Loan originator (individual): **RANDI MILLS**; NMLS #: 418434

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS
Page 14 of 14

Form 3044   1/01

IDS, Inc. - 30242

Borrower(s) Initials



**EXHIBIT A000017**

Loan Number: 320170764988

MIN: **100307110009512133**
Case No.: **71265019**

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **8th day of September, 2017**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the Borrower") to secure Borrower's Note to **EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING, A TEXAS CORPORATION** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**4224 W CRESCENT WAY
FRISCO, TEXAS 75034**
(Property Address)

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

**Covenants, Conditions and Restrictions of Record**

(the "Declaration"). The Property is a part of a planned unit development known as

**HERITAGE LAKES PHASE 1**
(Name of Planned Unit Development)

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

---

MULTISTATE PUD RIDER - Single Family –
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3150 1/01

Page 1 of 3

IDS, Inc.

Borrower(s) Initials 



**EXHIBIT A000018**

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

---



MULTISTATE PUD RIDER - Single Family –
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3150 1/01

Page 2 of 3

IDS, Inc.

Borrower(s) Initials _____



**EXHIBIT A000019**

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
ERIC TOLBERT                    -Borrower                                        -Borrower

---

MULTISTATE PUD RIDER - Single Family –
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                Form 3150 1/01

Page 3 of 3

IDS, Inc.



**EXHIBIT B000001**

# Mortgage Assistance Application

If you are having mortgage payment challenges, please complete and submit this application, along with the required documentation, to PennyMac Loan Services, LLC via mail using the enclosed prepaid envelope, fax: 1-800-947-1421, or online: www.PennyMac.com. We will contact you within five business days to acknowledge receipt and let you know if you need to send additional information or documents.

We will use the information you provide to help us identify the assistance you may be eligible to receive. If you need help completing this application, please contact PennyMac Loan Services, LLC at (866) 629-4570.

If you are experiencing a financial hardship you may be eligible for mortgage assistance from your state's housing finance agency or other state or local government agency.

For a list of HUD-approved housing counseling agencies that can provide foreclosure prevention information, or information on state or local government mortgage assistance programs that may be available, contact one of the following federal government agencies:

The U.S. Department of Housing and Urban Development (HUD) at (800) 569-4287 or www.hud.gov/counseling

The Consumer Financial Protection Bureau (CFPB) at (855) 411-2372 or www.consumerfinance.gov/mortgagehelp

If you need assistance with translation or other language assistance, HUD-approved housing counseling agencies may be able to assist you. These services are provided without charge.

For additional information on how to avoid foreclosure, including help for military servicemembers, you may also visit Fannie Mae's www.KnowYourOptions.com. Fannie Mae is the owner of your mortgage loan.

## Borrower Information

Borrower's name: _Eric Tolbert_

Social Security Number (last 4 digits): ___
E-mail address: _tolberterc3@gmail.com_ _____ Primary
phone number: _469-231-1396_ ☑ Cell ☐ Home ☐ Work ☐ Other Alternate phone
number: _____ ☐ Cell ☐ Home ☐ Work ☐ Other
Co-borrower's name: _N/A_

Social Security Number (last 4 digits): _____

E-mail address: _____ Primary
phone number: _____ ☐ Cell ☐ Home ☐ Work ☐ Other Alternate phone
number: _____ ☐ Cell ☐ Home ☐ Work ☐ Other
Preferred contact method (choose all that apply): ☑ Cell phone ☐ Home phone ☐ Work phone ☐ Email ☐ Text—checking this box indicates your consent for text messaging

*By providing your cell phone number(s), you are giving PennyMac, and companies working on its behalf, permission to contact you at this number about any PennyMac account. Your consent permits the use of text messaging, artificial or pre-recorded voice messages and automatic dialing technology. Message and data rates may apply. You may contact us at any time to change these preferences.

Is either borrower on active duty with the military (including the National Guard and Reserves), the dependent of a borrower on active duty, or the surviving spouse of a member of the military who was on active duty at the time of death? ☐ Yes ☐ No

Are you working with a 3rd party that's authorized to speak on your behalf during the modification review process? ☐ Yes ☐ No

If yes, please complete the Third-Party Authorization Form in this application.



**EXHIBIT B000002**

## Property Information

Property Address: _4224 West Crescent Way Frisco Tx 75034_

Mailing address (if different from property address): _____

The property is currently: ☑ A primary residence  ☐ A second home  ☐ An investment property

The property is (select all that apply): ☑ Owner occupied  ☐ Renter occupied  ☐ Vacant

Number of people in household: _2_

Is the property in livable condition? ☑ Yes ☐ No

Are repairs that impact the ability to live in the property complete? ☑ Yes ☑ No

I want to: ☑ Keep the property  ☐ Sell the property  ☐ Transfer ownership of the property to my servicer  ☐ Undecided

Is the property listed for sale? ☐ Yes  ☑ No – If yes, provide the listing agent's name and phone number—or indicate "for sale by owner" if applicable: _____

Is the property subject to condominium or homeowners' association (HOA) fees? ☐ Yes ☐ No
   If yes, **provide the most recent account statement with amount of dues and frequency:** $ _625_
   ☐ Monthly  ☑ Quarterly  ☐ Annually

**NOTE:** If your homeowners insurance is not included in your mortgage payment, **include a copy of your insurance declaration page.**



**EXHIBIT B000003**

## Hardship Information

The hardship causing mortgage payment challenges began on approximately (date) _8- 2021_ and is believed to be:

- ☐ Short-term (up to 6 months)
- ☐ Long-term or permanent (greater than 6 months)
- ☑ Resolved as of (date) _3 - 2022_

| TYPE OF HARDSHIP (CHECK ALL THAT APPLY) | REQUIRED HARDSHIP DOCUMENTATION |
|---|---|
| ☐ Unemployment | • Not required |
| ☑ Reduction in income: a hardship that has caused a decrease in your income due to circumstances outside your control (e.g., elimination of overtime, reduction in regular working hours, a reduction in base pay) | • Not required |
| ☑ Increase in housing-related expenses: a hardship that has caused an increase in your housing expenses due to circumstances outside your control (e.g., uninsured losses, increased property taxes, HOA special assessment) | • Not required |
| ☐ Disaster (natural or man-made) impacting the property or borrower's place of employment | • Not required |
| ☐ Long-term or permanent disability, or serious illness of a borrower/co-borrower or dependent family member  N/A | • Written statement from the borrower, or other documentation verifying disability or illness  **Note:** Detailed medical information is not required, and information from a medical provider is not required |
| ☐ Divorce or legal separation  N/A | • Final divorce decree or final separation agreement **OR** • Recorded quitclaim deed |
| ☐ Separation of borrowers unrelated by marriage, civil union, or similar domestic partnership under applicable law  N/A | • Recorded quitclaim deed **OR** • Legally binding agreement evidencing that the non-occupying borrower or co-borrower has relinquished all rights to the property |
| ☐ Death of borrower or death of either the primary or secondary wage earner  N/A | • Death certificate **OR** • Obituary or newspaper article reporting the death |
| ☐ Distant employment transfer/relocation  N/A | • **For active duty service members:** Permanent Change of Station (PCS) orders or letter showing transfer. • **For employment transfers/new employment:** Copy of signed offer letter or notice from employer showing transfer to a new location or written explanation if employer documentation not applicable, **AND** • Documentation that reflects the amount of any relocation assistance provided (not required for those with PCS orders) |
| ☐ Other – hardship that is not covered above:  N/A | • Written explanation describing the details of the hardship and any relevant documentation |



**EXHIBIT B000004**

## Borrower Income

Please enter all borrower income amounts in middle column.

| MONTHLY TOTAL BORROWER INCOME TYPE & AMOUNT | | REQUIRED INCOME DOCUMENTATION |
|---|---|---|
| Are you receiving any form of income? ☑ Yes ☐ No (see "required income documentation") | | If yes, complete this section and include required documentation. If no, provide an explanation. |
| Gross (pre-tax) wages, salaries and overtime pay, commissions, tips, and bonuses   If you're a teacher, indicate the number of months you are paid: _____ | $ 151,136.00 | • Include paystubs reflecting the most recent 30 days, or four weeks, of earnings for all employers and • Documentation reflecting year-to-date earnings, if not reported on the paystubs (signed letter or print out from employer) OR • Two most recent bank statements showing income deposit amounts |
| Self-employment income   * 4506-C can be obtained from our web-site (pennymac.com) or IRS website (www.irs.gov/pub/irs-pdf/f4506c.pdf) | $ N/A | • Two most recent bank statements showing self-employed income deposit amounts OR • Most recent signed and dated quarterly or year-to-date profit/loss statement OR • Most recent complete and signed business tax return OR • Most recent complete and signed individual federal income tax return OR IRS Form 4506-C (*) |
| Unemployment benefit income | $ N/A | • No documentation required |
| Social Security, pension, disability, death benefits, adoption assistance, housing allowance, other public assistance | $ N/A | • Award letters, Benefit Statement or other documentation showing the amount and frequency of the benefits OR • Two most recent bank statements showing direct deposit amounts |
| Rental income (rents received, less expenses other than mortgage expense) | $ N/A | • Two most recent bank statements demonstrating receipt of rent OR • Two most recent deposited/cancelled rent checks |
| Investment or insurance income | $ N/A | • Two most recent investment statements OR • Two most recent bank statements supporting receipt of the income |
| Other sources of income not listed above (You are not required to disclose. Note: Only include Child support, Alimony, or Separation Maintenance income unless if you choose to have it considered as income for you for repaying this loan assistance request) | $ N/A | • Two most recent bank statements showing receipt of income OR • Other documentation showing the amount and frequency of the income |

## Current Borrower Assets

Exclude retirement funds such as a 401(k) or Individual Retirement Account (IRA), and college savings accounts such as a 529 plan.

| | |
|---|---|
| Checking account(s) and cash on hand | $ 25000.00 |
| Savings, money market funds, and Certificates of Deposit (CDs) | $ 2000.00 |
| Stocks and bonds (non-retirement accounts) | $ N/A |
| Other: | $ N/A |



**EXHIBIT B000005**

## Borrower Certification and Agreement

1. I certify and acknowledge that all of the information in this Mortgage Assistance Application is truthful, and the hardship I identified contributed to my need for mortgage relief. Knowingly submitting false information may violate Federal and other applicable law.

2. I agree to provide my servicer with all required documents, including any additional supporting documentation as requested, and will respond in a timely manner to all servicer or authorized third party* communications.

3. I acknowledge and agree that my servicer is not obligated to offer me assistance based solely on the representations in this document or other documentation submitted in connection with my request.

4. I consent to the servicer or authorized third party* obtaining a current credit report for the borrower and co-borrower.

5. I consent to the disclosure by my servicer, authorized third party,* or any investor/guarantor of my mortgage loan(s), of any personal information collected during the mortgage assistance process and of any information about any relief I receive, to any third party that deals with my first lien or subordinate lien (if applicable) mortgage loan(s), including Fannie Mae, Freddie Mac, or any investor, insurer, guarantor, or servicer of my mortgage loan(s) or any companies that provide support services to them, for purposes permitted by applicable law, including but not limited to providing mortgage assistance, verifying any data or information contained in this application, and performing audit and quality control reviews. Personal information may include, but is not limited to: (a) my name, address, telephone number, (b) my Social Security number, (c) my credit score, (d) my income, and (e) my payment history and information about my account balances and activity.

6. I agree that the terms of this borrower certification and agreement will apply to any modification trial period plan, repayment plan, or forbearance plan that I may be offered based on this application. If I receive an offer for a modification trial period plan or repayment plan, I agree that my first timely payment under the plan will serve as acceptance of the plan.

7. I consent to being contacted concerning this application for mortgage assistance at any telephone number, including mobile telephone number, or email address I have provided to the lender, servicer, or authorized third party.*

8. If I, or someone on my behalf, instructed PennyMac to stop contacting me about my mortgage loan, I withdraw that instruction so that I may apply for mortgage assistance.

9. If I'm eligible for an assistance option that requires an escrow account to pay property taxes and/or hazard insurance and my loan didn't have one, PennyMac may establish one to make tax and/or insurance payments on my behalf.

10. I understand that if I have misrepresented any fact(s) in connection with this document, PennyMac may cancel any Agreement, proceed with foreclosure on my home, and/or pursue any other available legal remedies.

\* An authorized third party may include, but is not limited to, a housing counseling agency, Housing Finance Agency (HFA) or other similar entity that is assisting me in obtaining a foreclosure prevention alternative.

Borrower signature: _____    Date: 7-29-20?

Co-Borrower signature: _____N/A_____    Date: _____

**Please submit your completed application, together with the required documentation, to PennyMac Loan Services, LLC via mail using the enclosed prepaid envelope, fax: 1-800-947-1421, or online: www.PennyMac.com. We will contact you within five business days to acknowledge receipt and let you know if you need to send additional information or documents.**

We will use the information you provided to help us identify the assistance you may be eligible to receive.



**EXHIBIT B000006**

 **PENNYMAC**

P.O. Box 514387
Los Angeles, CA 90051-4387

**Notice Date:** November 23, 2022

**Loan Number:** 7838
**Property Address:**
4224 W Crescent Way
Frisco , TX 75034

Eric Tolbert

4224 W Crescent Way
Frisco, TX 75034

---

**REGARDING YOUR LOAN**

Thank you for your application for a loan modification. At Pennymac, we do everything we can to help our customers stay in their homes. With this goal in mind, we carefully reviewed the information you provided against the requirements of multiple loan modification programs.

We regret to inform you that Fannie Mae, the owner of your loan, was unable to approve your request for a loan modification per the guidelines established for the applicable loan modification programs. This letter will provide you with the results of our efforts and identify other foreclosure alternative options.

---

| **Toll-Free: (866) 629-4570** | **Website: PENNYMAC.COM** | **Payments:** | **General Correspondence:** |
|---|---|---|---|
| M – F 6:00 AM - 6:00 PM PT | Secure Messaging Online: | **Standard Address:** | Attn: Correspondence Unit |
| SAT 7:00 AM - 11:00 AM PT | Create an account and/or log in to | P.O. Box 30597 | P.O. Box 514387 |
| Modification Fax: (800) 947-1421 | PENNYMAC.COM, | Los Angeles, CA 90030-0597 | Los Angeles, CA 90051-4387 |
| | then look for the Secured Message | **Overnight Address:** | (Please do not send payments) |
| | Center to communicate with us securely. | Attn: Lockbox Operations | |
| | Once logged in, visit the "Modification Center" | 20500 Belshaw Ave. | **Notice of Error and Information** |
| | to view important documentations. | Carson, CA 90746 | **Request Address:** |
| | | (Please do not send correspondence) | Attn: Correspondence Unit |
| | | | PO Box 5133 |
| | | | Thousand Oaks, CA 91359-5133 |
| | | | (Please do not send payments) |

Denial Letter Unified Fannie 03-2022

**EXHIBIT B000007**

## Exhibit A

**Based on the information you provided, the following reason resulted in your loan modification denial.**

- Fannie Mae (FNMA) Flex Full Documentation Modification:Minimum Required Reduction: We are unable to offer you a Modification because the borrower's modified P&I payment must be less than the borrower's current P&I payment.
- Fannie Mae (FNMA) Flex Streamline Modification:Minimum Required Reduction: We are unable to offer you a Modification because the borrower's modified P&I payment must be less than the borrower's current P&I payment.

Denial Letter Unified Fannie 03-2022

**EXHIBIT C000001**

# Southwest's

**Hardship Withdrawal Request**
**Dual Qualified 401(k) Plan**

## Southwest Airlines Co. 401(k) Plan

### When would I use this form?

*When I am requesting a withdrawal due to a Hardship.*
- Please note that this withdrawal request may be subject to an administrative review period prior to processing and the investments in your account will not be sold until the withdrawal is processed. The administrative review period may take several business days. Note that your investments may fluctuate with market performance so you may want to redirect or diversify those investments prior to making a withdrawal request. If you initiate a fund transfer during the administrative review period, it may delay the processing of your withdrawal. If you want to make changes to the investments in your account prior to withdrawal, please contact Service Provider or access your account online

*I should not use this form:*
- If I have separated from employment with the employer/company sponsoring this Plan, I should use the Separation from Employment Withdrawal Request.
- If I am eligible to request an in-service withdrawal from my Plan or if I am 59½ or older, I should use the In-Service Withdrawal Request.
- If this account was transferred to me due to death, I should use the Death Benefit Claim Request.
- If this account was transferred to me due to divorce, I should use the Alternate Payee QDRO Distribution Request.

*Additional Information*
- Do not send copies of documents unless required (e.g., in the event you have already received 2 hardship distributions during the year). Copies of documents provided with this request will not be reviewed or considered unless required by the plan's administrative procedures. We may retain copies of documents in the plan's file, but you should continue to retain copies of documents indefinitely and to make them available at any time, upon request, to the employer or Plan Administrator.
- By logging into my account on the website at www.freedomtoretire.com, I may track the status of this withdrawal request.
- For assistance completing this hardship form, call us at 1-866-442-3988.
- Return instructions for this form are in Section H.
- Use black or blue ink when completing this form.

### A | What is my personal information?

*(Continue to the next section after completing.)*

*Account extension, if applicable, identifies a participant with multiple accounts.*

**Account Extension**

Last Name: Tolbert
First Name: Eric
M.I.: S
*(The name provided MUST match the name on file with Service Provider.)*

Mailing Address on My Account: 4224 West Crescent Way

City: Frisco
State: TX
Zip Code: 75034

Date of Birth (mm/dd/yyyy) Required: 07, 03, 1970

Daytime Phone Number: (469) 231-1396

Alternate Phone Number: ( )

- I have confirmed the address on my account by accessing my account online at www.freedomtoretire.com. If the address on my account does not match the address provided above, there will be processing delays.
- If I require an address change, I must update my address with my employer who will then need to update the address Service Provider has on file.
- Once the address is updated, I may submit this form with my new address entered above.

☐ *(Optional)* I authorize Service Provider to leave detailed account information on my voicemail at my: (Select One)
☐ Daytime Phone Number
☐ Alternate Phone Number
*Confirm number selected is entered above.*

By providing my mobile number and/or my email address below, I am consenting to receive text messages and/or emails related to this request.

Mobile Phone Number – *Standard data fees and text messaging rates may apply based on my carrier.*
(469) 231-1396

Email Address: Tolbertenc@Yahoo.com

**STOP** Am I a Puerto Rico resident? *(Must Complete)* ☐ Yes or ☐ No

**U.S. Status** *(Must Complete)*
☑ I am a U.S. Citizen or U.S. Resident Alien.
☐ I am a Non-Resident Alien or Other.
*Required – Provide Country of Residence:* _____
*(See Guide for IRS Form W-8BEN information.)*



**EXHIBIT C000002**

Tolbert _____ ~~Dac~~ _____ S _____    _____
Last Name          First Name          M.I.          Number

---

| B | What is my reason for this Hardship withdrawal? | (Continue to the next section after completing.) |

**Read the following important disclosures before completing your hardship withdrawal request.**
- I must respond to all questions in order to accurately summarize the selected hardship event. Incomplete information will not be processed and may result in a delay in receiving your funds.
- The hardship withdrawal is taxable and additional taxes could apply.
- The amount of the withdrawal cannot exceed the immediate and heavy financial need.
- *The terms of the Plan determine the contribution sources available for hardship withdrawals, including whether hardship withdrawals may be made from earnings on elective contributions or QNEC or QMAC accounts, if applicable.*
- As the recipient of this hardship withdrawal, I agree to preserve source documents substantiating the hardship summary information I have provided and to make them available at any time, upon request, to the employer or plan administrator.
- This hardship request requires your certification that the information provided is true and accurate. Read and review section G, of this form, before signing your signature and consent.
- Do not send copies of documents unless required (e.g., in the event you have already received 2 hardship distributions during the year). **Copies of documents provided with this request will not be reviewed or considered unless required by the plan's administrative procedures.**
- You must enter the total amount of your hardship request in section C. If section C is not complete, you acknowledge and certify under penalty of perjury that the gross amount of the hardship need is equal the total expense amount(s) you specified for the qualifying event(s) below.

☐ **Medical Expenses**
- Payment of medical expenses not otherwise covered by insurance and which are deductible as eligible expenses under Internal Revenue Code §213(d) (e.g., diagnosis, treatment, disease prevention, associated transportation, or long term care), which are incurred by me, my spouse, my dependents, or my primary beneficiaries.
- Examples of documentation that I must retain to substantiate my financial need may include an explanation of benefits or other documentation from the insurance company detailing insurance coverage and the medical expense costs not covered. In addition, a bill/invoice from a hospital, doctor, dentist or other healthcare provider, issued within the past year and itemized to include services for qualifying medical expenses as defined under Internal Revenue Code ("RC") §213(d) (e.g., for diagnosis, treatment, disease prevention, associated transportation, or long term care).

What is the name of the person receiving the care (first and last)? _____
What is the patient's relationship to me?  ☐ self   ☐ spouse   ☐ dependent   ☐ primary beneficiary under plan
What is the purpose of the medical care?  ☐ diagnosis   ☐ treatment   ☐ disease prevention   ☐ transportation   ☐ long-term
What is the amount of medical expenses not covered by insurance $_____
Name and address of service provider (hospital, doctor/dentist/chiropractor/other, pharmacy). If more than one provider, please attach name and address of each: _____

☐ **Purchase of your Principal Residence**
- The purchase must be used as your principal residence (not a vacation home or income property.)
- The principal residence can be a new or existing home, and the hardship may be incurred due to the cost of construction or land if building a principal residence, but the hardship may not be on account of mortgage or home equity loan payments.
- Examples of documentation that I must retain to substantiate my financial need may include a signed purchase & sales contract or other agreement of sale contract including cost and expenses directly related with the purchase of your principal residence.

Date of the purchase/sales agreement _____   Expected closing date _____
Purchase price of the principal residence $_____   Total expenses incurred $_____
Select the types of fees incurred:  ☐ down-payment   ☐ closing cost   ☐ title fees   ☐ other expenses associated with the purchase
Address of residence: _____
Name and address of the lender- _____

☒ **Prevention of Eviction/Foreclosure from your Principal Residence**
- I certify that this hardship withdrawal request is to prevent an eviction or foreclosure from your principal residence
- Examples of documentation that I must retain to substantiate my financial need may include an eviction or foreclosure notice from the bank or credit union lender/servicer of the mortgage or landlord which references the address of your principal residence and reflects the due date of the payment necessary to avoid the eviction or foreclosure.

Address of principal residence: 4224 West Crescent Way
Date of the notice and reason:  ☒ foreclosure notice date 12-12-2022   ☐ eviction notice date: _____
Due date of the payment to avoid foreclosure or eviction: 12-30-2022   12-30-2022 26
Name and address of the party that issued the foreclosure or eviction notice: Demy Mae Loan Services
P.O. Box 30597 Los Angeles CA 90030

☐ **Tuition or Other Educational Payments**
- I certify that this hardship withdrawal request is due to the payment of tuition, related education fees, and/or room and board expenses for up to 12 months of post-secondary education for me, my spouse, dependents, or named primary beneficiary as defined in IRC §152 (without regard to IRC 152(b)(1), (b)(2) and (d)(1)(B)).

---

**EXHIBIT C000003**

_Tolben_ _Tri_ _S_ _____
Last Name        First Name        M.I.    U.S. Social Security Number        Number

---

**C | What amount am I requesting for my Hardship withdrawal?**   (Continue to the next section after completing.)

Total cost of the event(s) causing hardship: $ _93,000_   ☐ Net Amount

- Amount of the withdrawal request cannot exceed the amount of the hardship.
- You must enter the total amount of your hardship request above. If you do not complete the amount in the line above, you acknowledge and certify under penalty of perjury that the gross amount of the hardship need is equal the total expense amount(s) you specified for the qualifying event(s) in section B.

If I check the Net Amount box, the amount written on the line, is the amount I will receive after applicable income taxes and fees *(not including any delivery charges)* are withheld.
-    - For example: If the amount I am requesting is $10,000.00, and my total tax/fee withholding is $1,500.00, the total amount taken from my account will be $11,500.00, resulting in a payment of $10,000.00 to me.
If I do not check the Net Amount box, the amount I will receive will be less than the amount requested after applicable income taxes and fees *(not including any delivery charges)* are withheld.
-    - For example: If the amount I am requesting is $10,000.00, and my total tax/fee withholding is $1,500.00, the total amount taken from my account will be $10,000.00, resulting in a payment of $8,500.00 to me.

- The amount I request for hardship may not exceed the amount of my financial need.
- If the amount requested exceeds available funds or exceeds limits imposed by IRC, regulations and/or Plan terms, the hardship will be processed for the maximum amount available.
- If my request is approved, and unless the Plan has directed otherwise, the hardship withdrawal will be prorated across all available U.S. and Puerto Rico contribution sources and investment options.
- My withdrawal may be subject to fees and/or loss of interest based upon my investment options, my length of time in the Plan and other possible considerations. If I have not been advised of the fees and risks associated with my withdrawal, I may contact Service Provider for a withdrawal quote at 1-866-LUV2SAV.

---

**D | How do I want my Hardship withdrawal delivered?**   (Continue to the next section after completing.)
*Select One for each contribution source - Once complete request is received in good order and the timing of approval. documentation, delivery of payment is based on completion of the withdrawal process and the timing of approval.*

*If I am a Puerto Rico resident, I should refer to and select from the available delivery options listed under Puerto Rico Contribution Sources.*

**For U.S. Contribution Sources:**
- If no option is selected, all transactions will be sent by United States Postal Service ("USPS") regular mail.
- If I would like to make a change to what I previously selected, I must cross out and initial the change(s). If I do not initial all changes, all transactions will be sent by USPS regular mail.
☐ **Check by USPS Regular Mail**
   - Estimated delivery time is up to 5 business days.
   - No additional charge.

☐ **Check by Express Delivery**
   - Estimated delivery time is 1-2 business days.
   - A non-refundable charge of up to $30.00 will be deducted, in addition to any withdrawal fees.
   - Available for delivery, Monday - Friday, with no signature required upon delivery.
   - If address is a P.O. Box, check will be sent by USPS Priority Mail and estimated delivery time is 2-3 business days.

☑ **Electronic Deposit (ACH) to the bank account on file**
   - I have an existing ACH that has been on file for at least fifteen (15) days and I wish to use it for this withdrawal request. If my ACH has not been established on my account for at least 15 days, a check will be sent to my address on file.
   - Estimated delivery time is 2-3 business days.
   - No additional charge.
   - Not available for Direct Rollovers.
   - Complete the information below in order to properly identify the ACH account.
   ➤ *If the bank information is incomplete or illegible, then a check will be mailed to the address on the account to avoid any delays in processing.*
   - By entering banking information, I authorize Service Provider to access records from public and proprietary sources in order to validate that I am the owner of the bank account. This process will not affect my credit.

| Bank Information | | | |
|---|---|---|---|
| Bank Account Nickname *(Optional)* | _Chase 19_ | Bank or Financial Institution Name | _J.P. Morgan CHASE_ |
| Last 4 digits of the Bank Account Number | | | |

---

**EXHIBIT C000004**

| Last Name | First Name | M.I. | Social Security Number | Number |
|---|---|---|---|---|
| Tolbert | Eric | S | | |

*(Continue to the next section after completing.)*

## F  How will my income taxes be withheld?
*Complete for each contribution source, if applicable.*

### For U.S. Contribution Sources:

**Federal Income Tax**
- Ten percent (10%) of the total taxable amount of my withdrawal will be withheld for Federal Income Tax, unless I check the box below.

☑ Do not withhold ten percent (10%) Federal Income Tax from my Hardship withdrawal.

I would like additional Federal Income Tax withholding *(Optional):* _____ % or $_____ *(This is in addition to the ten percent (10%) Federal Income Tax withholding)*

**State Income Tax**

I should refer to information from the Department of Revenue for my state of residence. If applicable, I must attach my State Income Tax withholding form to make tax elections when required. In the even the withholding form is required for my withdrawal and not submitted, Service Provider will withhold in accordance with applicable State regulations.

- State Income Tax withholding is mandatory in some states and will be withheld regardless of any election below. I would like additional State Income Tax withholding: _____ % or $_____ *(This is in addition to any mandatory State Income Tax withheld based on the reason and type of withdrawal.)*

- Certain states allow an election for no State Income Tax withholding depending on the reason and type of withdrawal I have selected. For these states only, State Income Tax will be withheld unless I elect otherwise below.

  If the checkbox is not marked below, I choose to have State Income Tax withheld from my withdrawal. I would also like to have additional State Income Tax withholding: _____ % or $_____ *(This is in addition to any elective State Income Tax withheld based on the reason and type of withdrawal.)*

  ☑ Do not withhold State Income Tax *(if election is permitted and I have attached the proper election form if required by my state).*

- Certain states do not require mandatory State Income Tax withholding but allow to elect State Income Tax withholding depending on the reason and type of withdrawal I have selected.

  ☐ I would like State Income Tax withheld – Optional State Income Tax withholding: _____ % or $_____ *(If this optional income tax election is permitted. I also have attached the proper income tax election form if required by my state to elect this optional withholding).*

**Puerto Rico Residents**
- If I am a Puerto Rico resident, any distribution will also be subject to tax withholding and reporting in Puerto Rico.
- Withholding will be based on the reason and type of withdrawal I have selected.

### For Puerto Rico Contribution Sources:

**Puerto Rico Income Tax**
- Puerto Rico Income Tax will be withheld based on the reason and type of withdrawal I have selected.
  - ☐ I was eligible for a special tax sale and I pre-paid taxes at that time. I have attached required documentation to show evidence of taxes paid. *(See Guide for additional information.)*

**Federal Income Tax**
- Any earnings on Puerto Rico contribution sources are also taxable in the United States and will be reported on the IRS Form 1099-R. The default withholding is twenty percent (20%) of the taxable earnings.

## G  Signatures and Consent *(Signatures must be on the lines provided.)*
*(After receiving ALL required signatures, continue to the next section.)*

**My Consent** *(Please sign on the 'My Signature' line below.)*

I acknowledge that I have received, read, understand and agree to all pages of this Hardship Withdrawal Request form.
- I certify that all information that I have provided on this form, including the summary information I have provided concerning my hardship request is true and accurate.
- As a condition of this hardship withdrawal, I agree to preserve indefinitely the source documents which substantiate my hardship request and to make them available at any time, upon request, to the employer or administrator.

I acknowledge and I agree:
- The hardship withdrawal requested does not exceed the amount of my financial need (including any amounts necessary to pay any federal, state or local income taxes or penalties reasonably anticipated to result from the withdrawal).
- I have obtained all available withdrawals (other than hardship withdrawals) and all non-taxable loans (to the extent such withdrawals and loans do not increase the amount of my financial need) under the Plan and all other plans maintained by the employer.
- I confirm that I have taken all eligible withdrawals under the plan.
- I represent that I have insufficient cash or other liquid assets to satisfy the financial need.

I understand the following:
- Any election on this Hardship Withdrawal form is made voluntarily and is effective for 180 days.
- I am liable for any income tax and/or penalties assessed by the IRS and/or state tax authorities for any election I have chosen.
- Once a payment has been processed, it cannot be changed or reversed.
- In the event that any section of this form is incomplete or inaccurate, Service Provider may not process the transaction requested on this form and may require a new form or that I provide additional or proper information before the transaction can be processed.
- Funds may impose redemption fees on certain transfers, redemptions or exchanges if assets are held less than the period stated in the fund's prospectus or other disclosure documents. I will refer to the fund's prospectus and/or disclosure documents for more information.

**EXHIBIT C000005**

| Tolbert | Eric | S | | |
|---|---|---|---|---|
| Last Name | First Name | M.I. | U.S. Social Security Number | Number |

| G | **Signatures and Consent** *(Signatures must be on the lines provided.)* | *(After receiving ALL required signatures, continue to the next section.)* |
|---|---|---|

**My Consent** *(Please sign on the 'My Signature' line below.)*

- Under penalty of perjury, I certify that the U.S. Social Security number or U.S. Taxpayer Identification number I have provided in Section A is correct. I am a U.S. person if I marked the U.S. Citizen or U.S. Resident Alien box in Section A of this form.
- Additional authentication may be necessary before my withdrawal is processed and/or payment released.

Any person who presents a false or fraudulent claim is subject to criminal and civil penalties.

**My Signature** Eric Tolbert                                   **Date (Required)** 12-19-2022

*A handwritten signature is required on this form. An electronic signature will not be accepted and will result in a significant delay.*

| H | **Where should I send this form?** |
|---|---|

**After all signatures have been obtained, this form can be**

| Uploaded Electronically: | OR | Sent Regular Mail to: | OR | Sent Express Mail to: |
|---|---|---|---|---|
| Login to account at | | Empower Retirement | | Empower Retirement |
| www.freedomtoretire.com | | PO Box 5520 | | 8515 E. Orchard Road |
| Click on Upload Documents to submit | | Denver, CO 80217 | | Greenwood Village, CO 80111 |

We will not accept hand delivered forms at Express Mail addresses.

Securities, when presented, are offered and/or distributed by GWFS Equities, Inc., Member FINRA/SIPC. GWFS is an affiliate of Empower Retirement, LLC; Great-West Funds, Inc.; and registered investment adviser, Advised Assets Group, LLC. This material is for informational purposes only and is not intended to provide investment, legal or tax recommendations or advice.



**EXHIBIT D000001**

01/042

22-01885                                                    FILED FOR RECORD
4224 W CRESCENT WAY, FRISCO, TX 75034

### NOTICE OF FORECLOSURE SALE AND
### APPOINTMENT OF SUBSTITUTE TRUSTEE

22 DEC 13 AM 9: 51

DENTON CO. TEX

BY ___ Cmv ___ DEPUTY

| | |
|---|---|
| <u>Property</u>: | The Property to be sold is described as follows: |
| | LOT NO. 1, BLOCK NO. W OF HERITAGE LAKES PHASE 1 AN ADDITION TO THE CITY OF FRISCO, DENTON COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME Q AT PAGE 40 OF THE PLAT RECORDS OF DENTON COUNTY, TEXAS. |
| <u>Security Instrument</u>: | Deed of Trust dated September 8, 2017 and recorded on September 15, 2017 at Instrument Number 114285 in the real property records of DENTON County, Texas, which contains a power of sale. |
| <u>Sale Information</u>: | January 3, 2023, at 10:00 AM, or not later than three hours thereafter, at the courtyard area of the southwest corner of the Denton County Courts Building, or as designated by the County Commissioners Court. |
| <u>Terms of Sale</u>: | Public auction to highest bidder for cash. In accordance with Texas Property Code section 51.009, the Property will be sold as is, without any expressed or implied warranties, except as to warranties of title, and will be acquired by the purchaser at its own risk. In accordance with Texas Property Code section 51.0075, the substitute trustee reserves the right to set additional, reasonable conditions for conducting the sale and will announce the conditions before bidding is opened for the first sale of the day held by the substitute trustee. |
| <u>Obligation Secured</u>: | The Deed of Trust executed by ERIC TOLBERT secures the repayment of a Note dated September 8, 2017 in the amount of $389,700.00. PENNYMAC LOAN SERVICES, LLC, whose address is c/o PennyMac Loan Services, LLC, P.O. Box 30597, Los Angeles, CA 90030, is the current mortgagee of the Deed of Trust and Note and PennyMac Loan Services, LLC is the current mortgage servicer for the mortgagee. Pursuant to a servicing agreement and Texas Property Code section 51.0025, the mortgagee authorizes the mortgage servicer to administer the foreclosure on its behalf. |
| <u>Substitute Trustee</u>: | In accordance with Texas Property Code section 51.0076 and the Security Instrument referenced above, mortgagee and mortgage servicer's attorney appoint the substitute trustees listed below. |

**THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.**

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**



4767708



**EXHIBIT D000002**

*Kirk Schwartz*
_____
De Cubas & Lewis, Schwartz, P.C.
Kirk Schwartz , Attorney at Law
1999 N University Drive, Suite 204
Coral Springs, FL 33071

*Shelley Ortolani*
_____
Substitute Trustee(s): Logan Thomas, Bob Dickerson,
Phillip Pierceall, Aaron Parker, Douglas Rodgers,
Terry Waters, Bruce Miller, Travis Kaddatz, Craig
Muirhead, Clay Golden, Wendy Lambert, David Ray,
Shawn Schiller, Cary Corenblum, Joshua Sanders,
Matthew Hansen, Francesca Ortolani, Mary Mancuso,
Shelley Ortolani, Michele Hreha, David Stockman,
Guy Wiggs, Brenda Wiggs, Denise Boerner, Donna
Stockman, Tim Lewis, Michelle Schwartz, Kathy
Arrington, Russell Stockman, Janet Pinder, Robert
LaMont, Sheryl LaMont, Harriett Fletcher, Allan
Johnston, Sharon St. Pierre, Ronnie Hubbard, Carol
Dunmon, Jane Kline, Payton Hreha or Chasity
Lewallen and employees included but not limited to
those listed herein.

c/o De Cubas & Lewis, Schwartz, P.C.
1999 N University Drive, Suite 204
Coral Springs, FL 33071

Certificate of Posting

I, _____, declare under penalty of perjury that on the _____ day of
_____, 20____, I filed and posted this Notice of Foreclosure Sale in accordance with the
requirements of DENTON County, Texas and Texas Property Code sections 51.002(b)(1) and 51.002(b)(2).

CERTIFIED A TRUE AND CORRECT COPY
OF THE RECORD ON FILE IN MY OFFICE
DAVID TRANTHAM
DENTON COUNTY DISTRICT CLERK
1|6|23    By: _____
Date                        Deputy Clerk